# EXHIBIT A

**ASSET PURCHASE AND SALE AGREEMENT**

**by and between**

**HISTORIC TIMBER AND PLANK, INC. ("HTP"),**
**and ADKOM LLC ("Adkom")**

**collectively, "Debtors" or "Sellers"**

**and**

**5M VENTURE II LLC,**

**"Buyer"**

**Dated as of _____ __, 2024**

## ASSET PURCHASE AND SALE AGREEMENT

This **ASSET PURCHASE AND SALE AGREEMENT** (this "**Agreement**") is entered into by and among **Historic Timber and Plank, Inc.** ("**HTP**") and **Adkom LLC** ("**Adkom**") (collectively, "**Sellers**"), on the one hand, and **5M Venture II, LLC,** ("**Buyer**"), on the other hand. Sellers and Buyer are sometimes referred to herein individually as a "**Party**" and collectively as the "**Parties**."

## RECITALS

A.      Petition under title 11 of the United States Code (the "**Bankruptcy Code**") commencing the chapter 11, subchapter V cases of Historic Timber and Plank, Inc. and Adkom, LLC were filed on June 20, 2024 (the "**Bankruptcy Cases**");

B.      The Bankruptcy Cases of the above-described debtors (collectively, the "**Debtors**") are being administered under Case Nos. 24-30423 (*In re Historic Timber and Plank, Inc.*) and 24-30425 (*In re Adkom, LLC*) (the "**Bankruptcy Estates**") in the United States Bankruptcy Court for the Southern District of Illinois (the "**Bankruptcy Court**");

C.      The Debtors continue to operate their respective businesses as debtors-in-possession;

D.      Buyer is a third-party and unaffiliated with the Debtors;

E.      Buyer desires to purchase from Debtors, and Debtors desire to sell to Buyer, substantially all of their assets pursuant to the terms and conditions set forth in this Agreement below;

F.      The transactions contemplated by this Agreement are subject to the approval of the Bankruptcy Court and will be consummated only pursuant to the Sale Order approving such sales free and clear of any interest in such property, all as more specifically provided in this Agreement, and in accordance with Sections 105, 363 and 365 of the Bankruptcy Code and other applicable provisions of the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure and the Bidding Procedures (as defined below); and

G.      Debtors and Buyer have negotiated in good faith and at arm's length for the purchase and sale of the Purchased Assets (as defined below) and for certain bid protections in connection therewith, subject to the terms and conditions set forth herein.

## AGREEMENT

**NOW, THEREFORE**, for and in consideration of the mutual covenants and agreements contained in this Agreement and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties, intending to be legally bound hereby, agree as follows:

77294848;1

# ARTICLE I
## DEFINITIONS; CONSTRUCTION AND INTERPRETATION

Section 1.1. <u>Definitions</u>.   The capitalized words, terms and phrases used in this Agreement, including in the preamble and the recitals hereto, shall have the meanings ascribed to such words, terms and phrases in the "Glossary of Defined Terms" attached to this Agreement as Appendix A.

Section 1.2. <u>Construction and Interpretation</u>.   Unless the context of this Agreement requires otherwise: (a) words of any gender include each other gender; (b) words using the singular or plural number also include the plural or singular number, respectively; (c) the words "hereof," "herein," "hereby," "hereto" and similar words refer to this entire Agreement and not to any particular Article, Section, Exhibit, Schedule or Appendix or any other subdivision of this Agreement; (d) references to "Article," "Section," "Exhibit" "Schedule" or "Appendix" are to the Articles, Sections, Exhibits, Schedules and Appendices respectively of this Agreement; (e) the words "include" or "including" shall be deemed to be followed by the phrases "without limitation" or "but not limited to" whether or not such words are followed by such phrases or phrases of like import; (f) references to "this Agreement" or any other agreement or document shall be construed as a reference to such agreement or document as amended, modified or supplemented and in effect from time to time and shall include a reference to any document which amends, modifies or supplements it; and (g) titles for captions of Sections contained in this Agreement are inserted only as a matter of convenience and for reference, and in no way define, limit, extend, describe or otherwise affect the scope or meaning of this Agreement or the intent of any provision hereof. Each of the Schedules, Exhibits and Appendices referred to in this Agreement is expressly made a part hereof.   In the event of any inconsistency between the statements in the body of this Agreement and those in the Schedules, Exhibits or Appendices, the statements in the body of this Agreement will control.   Whenever any provision of this Agreement refers to any Person's right to consent to or be satisfied with any action, such consent or satisfaction shall be in the Person's sole and absolute discretion, unless the provision granting such Person the right to consent or be satisfied limits the Person's consent or satisfaction right in some other manner.   Whenever this Agreement refers to a number of days, such number shall refer to calendar days unless Business Days are specified.   All accounting terms used herein and not expressly defined herein shall have the meanings given to them under GAAP.

# ARTICLE II
## SALE AND PURCHASE OF THE PURCHASED ASSETS

Section 2.1. <u>Sale and Purchase of the Purchased Assets</u>.   Upon the terms and subject to the conditions set forth in this Agreement and the Sale Order, at the Closing, Debtors agree to sell, assign, transfer, convey and deliver to Buyer, and Buyer agrees to purchase from Debtors, free and clear of all liens, encumbrance and interests, all of Debtor's rights, title, interest and benefit in and to the "**Purchased Assets**" which shall include the following:

(a)      All of Debtors' rights, title and interest, beneficial or otherwise, in and to its personal property including all personal and fixture property of every kind and nature including without limitation all goods (including inventory, equipment and accessions thereto), instruments (including promissory notes), documents, accounts, chattel paper (whether tangible or electronic),

deposit accounts, letter-of-credit rights (whether or not the letter of credit is evidenced by a writing), commercial tort claims, securities and all other investment property, supporting obligations, any other contract rights or rights to the payment of money, insurance claims and proceeds, and all general intangibles (including all payment intangibles) now owned by Debtors or in the Debtors' possession or control or any such items hereinafter acquired;

(b)    Debtors' real property commonly known as 28066 Van Horne Lane, Jerseyville, Illinois 62052 and all fixtures thereon; and

(c)    All of Debtor's rights, title and interest, beneficial or otherwise, in and to any and all proceeds of the foregoing and interest accruing with respect thereto.

### ARTICLE III
### LIABILITIES

Section 3.1.  <u>No Assumed Liabilities</u>.  Buyer shall not be deemed to have assumed any liabilities of Debtors in connection with Buyer's purchase of the Purchased Assets.  Buyer shall not, is not obligated to, and does not hereby assume or become liable on or with respect to any obligations or liabilities of Debtors, direct or indirect, known or unknown, or absolute, vested or contingent, all of which shall be retained by Debtors.

### ARTICLE IV
### PURCHASE PRICE AND PAYMENT

Section 4.1.  <u>Purchase Price</u>.  The consideration for the Purchased Assets (the "**Purchase Price**") shall be cash consideration in the amount of One Million Five Hundred Thousand Dollars ($1,500,000.00).

Section 4.2.  <u>Payment</u>.  The Purchase Price will be paid as follows:

(a)    No later than fourteen (14) days prior to the Sale Hearing (as defined below), Buyer will deposit the sum of Fifty Thousand Dollars ($50,000.00) with Debtors' counsel, The Desai Law Firm LLC ("**Debtors' Counsel**"), by wire transfer pursuant to the wire instructions set forth on <u>Schedule 4.2</u> attached hereto and made a part hereof by this reference (the "**Deposit**").  The Deposit shall be held in a segregated interest-bearing account, with all interest accrued thereon to be included in the definition of Deposit.  The Deposit shall be fully refundable to Buyer in the event the Closing does not occur for any reason whatsoever, subject to any deduction for liquidated damages in the event of a knowing and intentional breach by Buyer in strict accordance with the provisions of <u>Section 11.4</u> below.  In such instance, Debtors' Counsel shall refund the Deposit to Buyer upon the earlier to occur of (i) three (3) days after the termination of this Agreement, or (ii) three (3) days after the outside date for when the Closing was to occur under <u>Section 6</u> below, pursuant to wire instructions provided by Buyer to Debtors' Counsel.

(b)    On the Closing Date, Buyer will deposit with Debtors' Counsel, an amount equal to the Purchase Price, less the Deposit and any offset permitted under <u>Article VIII</u>, by cashier's check, wire transfer or other immediately available funds.

77294848;1

## ARTICLE V
## BANKRUPTCY COURT MATTERS

Section 5.1.   Bankruptcy Court Approval.

(a)     Buyer and Debtors acknowledge that, under the Bankruptcy Code, the sale of the Purchased Assets is subject to approval of the Bankruptcy Court and that consummation of the sale of the Purchased Assets is contingent upon the approval of the Bankruptcy Court.  Buyer and Debtors acknowledge that to obtain such approval, Debtors must demonstrate that they have taken reasonable steps to obtain the highest or best value possible for the Purchased Assets, including giving notice of the transactions contemplated by this Agreement to creditors and other interested parties as ordered by the Bankruptcy Court, providing information about the Purchased Assets to prospective bidders, entertaining higher or better offers from qualified bidders and, if necessary, conducting an Auction and selling the Purchased Assets to another qualified bidder.

(b)     No later than August 30, 2024, Debtors shall file with the Bankruptcy Court, and prosecute the same to completion, such pleadings and motions that shall be necessary and appropriate to receive any and all orders and rulings from the Bankruptcy Court, and to provide such notifications to the Bankruptcy Court or interested parties, that are necessary or appropriate, in writing, to fully authorize and allow Buyer the benefit of the transactions set forth in this Agreement, including without limitation Buyer's acquisition of the Purchased Assets as contemplated by this Agreement, and Debtors' subsequent sale, assignment and transfer of the Purchased Assets as contemplated under this Agreement, and shall further take any and all commercially reasonable and customary actions and make and submit such appropriate notices, filings and submissions, and make all appropriate court appearances in support thereof.  Any motion to approve the sale (the "**363 Motion**") shall be brought *inter alia* under Section 363 of the Bankruptcy Code, specifically including Sections (b), (f), (k) and (m) of the Bankruptcy Code, free and clear of any interest in such property, which 363 Motion shall include *inter alia* a request for a waiver of the stay imposed by Federal Rule of Bankruptcy Procedure 6004(h).  The order being sought by the 363 Motion shall be referred to herein as the "**Sale Order**", the form of which is attached hereto as Exhibit "A", as may be modified subject to approval by Buyer in its sole and absolute discretion but which approval shall not unreasonably be withheld.

(c)     The Sale Order, once entered by the Bankruptcy Court, shall be a "**Final Order**" provided: (i) no appeal, notice of appeal, motion to amend or make additional findings of fact, motion to alter or amend judgment, motion for rehearing or motion for new trial has been timely filed or, if any of the foregoing has been timely filed, it has been disposed of in a manner that upholds and affirms the subject order in all respects without the possibility for further appeal or rehearing thereon; (ii) the time for instituting or filing an appeal, motion for rehearing or motion for new trial shall have expired; and (iii) no stay is in effect.  As a condition to Closing the sale and of all of Buyer's obligations hereunder, a Final Order shall have been entered by the Bankruptcy Court in a form reasonably acceptable to Buyer and Debtors. The parties may jointly waive the requirement of a Final Order.

(d)     Subject to the provisions of Section 5.2 below, in the event that a Sale Order does not become a Final Order entered by the Bankruptcy Court as contemplated by this Section 5.1,

Buyer shall have the right to terminate this Agreement, and the Parties shall have no further obligations to one another except for those that expressly survive such termination.

Section 5.2.   <u>Overbidding</u>.

(a)     With respect to any proposed bidding or "stalking horse" procedure requested to be contained in or contemplated by any Bankruptcy Court pleading to be contained in the proposed bid procedures order (the "**Bidding Procedures**") or proposed Sale Order, the following terms and conditions shall apply in each case: (i) the bid procedures to be employed and contained in the Bidding Procedures shall be acceptable to Buyer, (ii) the Bidding Procedures shall allow Buyer a reasonable opportunity to overbid with respect to any competing overbid, provided that in any given instance of an overbid by Buyer, Buyer shall not lose any of the bid protections set forth in the Bidding Procedures, (iii) Debtor may not accept any competing bid from First Bank of the Lake, or any of its affiliates, and (iv) unless otherwise specifically agreed to by Buyer, Debtor may not accept any competing bid for the Purchased Assets unless such competing bid (A) is made in compliance with the Bidding Procedures, (B) is received no later than 5:00 p.m. CT one day prior to the hearing on approval of 363 Motion (the "**Sale Hearing**"), (C) includes a deposit equal to an amount of not less than ten percent (10%) of the purchase price in the bid, and (D) exceeds the amount of the Purchase Price by the sum of at least One Hundred Thousand Dollars ($100,000.00) <u>plus</u> the Break-Up Fee and Expense Reimbursement, and is no less favorable than the terms of this Agreement.  The Bidding Procedures shall further provide that subsequent overbids may only be in increments of Twenty-five Thousand Dollars ($25,000.00), and that an Auction shall occur no later than seven days after the date set for the Sale Hearing at the office of Debtors' Counsel.

(b)     As a condition to Closing the sale and of all of Buyer's obligations under this Agreement, the Sale Order and any Bidding Procedures Order shall have been entered by the Bankruptcy Court in a form reasonably acceptable to Buyer and Debtors and shall include a finding that the Buyer is a good faith purchaser under Section 363 of the Bankruptcy Code.  Buyer shall have the right to terminate this Agreement if, among other things, (i) the Sale Order is not entered by the Bankruptcy Court by October 18, 2024, and (ii) if the Sale Order does not become a Final Order within fourteen (14) days after the Sale Order is entered by the Bankruptcy Court, and the Parties shall have no further obligations to one another except for those that expressly survive such termination.

(c)     If an Auction is conducted, and Debtors do not choose Buyer as the successful bidder, but instead chooses Buyer as the bidder as having submitted the next highest or otherwise best bid at the conclusion of such Auction, Buyer may, at Buyer's sole election, become the back-up bidder (the "**Back-Up Bidder**").  The Parties acknowledge that the Bidding Procedures shall provide that Buyer may elect, in its sole discretion, to become the Back-Up Bidder under such circumstances, in which case Buyer will keep its bid to consummate the transactions contemplated by this Agreement on the terms and conditions set forth in this Agreement (as the same may be improved upon by Buyer prior to or at the Auction, including at Buyer's highest bid made at the Auction) open and irrevocable until the earlier of: (i) the date of closing on the sale of the Purchased Assets to the successful bidder; and (ii) seven (7) days following the date the order approving the sale of the Purchased Assets to the successful bidder shall have become a Final Order (such date, the "**Back-Up Period**"); provided, however, that if the successful bidder shall fail to close on its purchase of the Purchased Assets prior to the expiration of the Back-Up Period,

the Back-Up Bidder, at its sole election, shall be deemed to be the successful bidder, in which case, Debtors, without further order of the Bankruptcy Court, and the Back-Up Bidder shall consummate the transactions contemplated by this Agreement within ten (10) days of becoming the successful bidder on the terms and conditions set forth in this Agreement (as the same may be improved upon by Buyer prior to the conclusion of the Auction).

(d)    In the event that Buyer is not the successful bidder nor becomes the successful bidder during the Back-up Period, if applicable, Buyer shall be entitled to receive (i) a break-up fee equal to five percent (5%) of the Purchase Price of this Agreement (the "**Break-Up Fee**"), plus (ii) reimbursement of all documented, reasonable, actual, out-of-pocket costs and expenses paid or incurred by Buyer directly incident to, under, or in connection with the negotiation, execution and performance under the letter of intent, this Agreement and the transactions contemplated hereunder (including travel expenses and reasonable fees and disbursements of counsel, accountants and financial advisors) in an amount not to exceed Fifty Thousand Dollars ($50,000.00) (the "**Expense Reimbursement**").

## ARTICLE VI
## THE CLOSING; THE CLOSING DATE; ACTION AT CLOSING

Section 6.1.   Closing.  The closing of the transactions contemplated by this Agreement (the "**Closing**") shall occur within sixty (60) days after the Sale Order entered by the Bankruptcy Court becomes a Final Order, on such date as designated by Buyer, at a place mutually agreed upon by the Parties; provided, however, Buyer shall have the right and option to extend the date for Closing for two additional periods of forty-five (45) days each by providing written notice to Debtors that Buyer is exercising its right to extend prior to the then scheduled day for Closing and by delivering to Debtor a non-refundable extension fee for each such extension in the amount of Fifteen Thousand Dollars ($15,000.00).  The date on and time at which the Closing actually occurs is referred to in this Agreement as the "**Closing Date**".

Section 6.2.   Debtor's Closing Deliverables.  At the Closing, and concurrently with the making of the deliveries by Buyer of the Buyer's Closing Deliverables as set forth in Section 6.3, Debtors shall deliver, or cause to be delivered, to Buyer and as may otherwise be directed, the following (herein referred to collectively as "**Debtors' Closing Deliverables**"):

(a)    the duly executed Assignment Agreement; and

(b)    any other documentation the Buyer reasonably requests.

Section 6.3.   Buyer's Closing Deliverables.  At the Closing, and concurrently with the making of deliveries by Debtors of the Debtors' Closing Deliverables to Buyer as set forth in Section 6.2, Buyer shall deliver, or cause to be delivered, to Debtors the following (herein referred to collectively as "**Buyer's Closing Deliverables**"):

(a)    payment of the Purchase Price; and

(b)    the duly executed Assignment Agreement, if necessary.

Section 6.4.  <u>Expenses</u>.  Except as expressly set forth in <u>Section 15.10</u> and as may otherwise by expressly set forth herein, all costs, fees, Taxes and expenses in connection with the transactions contemplated by this Agreement shall be paid by the Debtors.

Section 6.5.  <u>Further Assurances</u>.  It is the intent of this Agreement that Debtors shall at the Closing convey, or cause to be conveyed, to Buyer the Purchased Assets.  Debtors and Buyer agree that at the Closing and any time thereafter, upon the reasonable request of Debtors or Buyer, the other Party shall execute, acknowledge and deliver such deeds, assignments, conveyances, transfers and other instruments and documents and perform such acts as Debtors or Buyer, as applicable, shall from time to time reasonably require (at no cost to Debtors unless such request is from Debtors) for the better perfecting, assuring, conveying, assigning, transferring and confirming unto Buyer the property and rights herein conveyed or assigned or intended now or hereafter so to be.

## ARTICLE VII
## REPRESENTATIONS AND WARRANTIES

Section 7.1.  <u>Representations and Warranties of Debtor</u>.  Debtors represent and warrant for the benefit and reliance of Buyer as follows, as of the date of this Agreement and as of the Closing Date:

(a)    <u>Power and Authority</u>.  Debtors have all requisite power and authority to enter into and carry out each of the Debtors' obligations under this Agreement.

(b)    <u>Due Authorization, Execution and Delivery</u>. The execution, delivery, and performance of this Agreement by Debtors and the persons executing the same on behalf of Debtors have been duly and validly authorized, subject to approval of the Bankruptcy Court.

(c)    <u>Legal, Valid, Binding and Enforceable</u>. This Agreement and the other agreements and instruments contemplated hereby constitute legal, valid and binding obligations of Debtors, enforceable in accordance with their respective terms, subject to approval of the Bankruptcy Court.

(d)    <u>No Consents</u>. No material consent, license, permit, order, approval or authorization of any Governmental Authority or private party is required in connection with the execution, delivery and performance of this Agreement by Debtors, other than the Bankruptcy Court pursuant to <u>Article V</u> above.

(e)    <u>No Conflict/No Breach</u>. The execution, delivery or performance of this Agreement do not, with or without the giving of notice and/or the passage of time (a) violate any provision of Law applicable to Debtors or the Purchased Assets or which would prevent the consummation of the transactions contemplated by this Agreement or (b) conflict with or result in the breach or termination of, or constitute a default under or pursuant to any judgment, order, injunction, decree or ruling of any court or Governmental Authority by which Debtors or the Purchased Assets are subject, or which would prevent the consummation of the transactions contemplated by the Agreement, or (c) result in the creation of any lien, charge or encumbrance upon any of the Purchased Assets.

(f)     <u>No Litigation</u>. Except for the Bankruptcy Case, there are no actions, claims, suits, arbitrations, mediations, or other proceedings pending or, to the best of Debtors' knowledge, threatened in writing against Debtors or the Purchased Assets in any court or before any arbitrator or mediator or any administrative agency ("**Actions**") which would prevent Debtors from completing the transactions provided for herein.

(g)     <u>Investment Company</u>.  Debtors are not an "investment company" or an "affiliated person" thereof, as such terms are defined in the Investment Company Act of 1940 as amended, and the rules and regulations thereunder.

(h)     <u>Brokers and Finders</u>.  Debtors have not engaged or done business with any Person who may have a claim to, and has not incurred any obligation or liability to any Person with respect to, any broker or agent fees or commissions, finder's fees, or other compensation or consideration as a result of or in connection with the transactions contemplated by this Agreement.

Section 7.2.   <u>Representations and Warranties of Buyer</u>.  Buyer represents and warrants for the benefit and reliance of Debtor as follows, as of the date of this Agreement and as of the Closing Date:

(a)     <u>Status, Power and Authority</u>.  Buyer is duly organized, validly existing and in good standing under the Laws of the state of its formation with all requisite power and authority to enter into and carry out its obligations under this Agreement.

(b)     <u>Due Authorization, Execution and Delivery</u>.   The execution, delivery, and performance of this Agreement by the persons executing the same on behalf of Buyer have been duly and validly authorized.

(c)     <u>Legal, Valid, Binding and Enforceable</u>.  This Agreement and the other agreements and instruments contemplated hereby constitute legal, valid and binding obligations of Buyer, enforceable in accordance with their respective terms.

(d)     <u>No Consents</u>.  No material consent, license, permit, order, approval or authorization of any Governmental Authority or private party is required in connection with the execution, delivery and performance of this Agreement by Buyer.

(e)     <u>No Conflict/No Breach</u>.  The execution, delivery or performance of this Agreement do not, with or without the giving of notice and/or the passage of time (a) violate any provision of Law applicable to Buyer or which would prevent the consummation of the transactions contemplated by this Agreement or (b) conflict with or result in the breach or termination of, or constitute a default under or pursuant to any indenture, mortgage or deed of trust or any judgment, order, injunction, decree or ruling of any court or Governmental Authority, or any other agreement or instrument by which Buyer is bound, or to which it is subject, or which would prevent the consummation of the transactions contemplated by the Agreement.

(f)     <u>Brokers and Finders</u>.  Buyer has not engaged or done business with any Person who may have a claim to, and has not incurred any obligation or liability to any Person with respect to, any broker or agent fees or commissions, finder's fees, or other compensation or consideration as a result of or in connection with the transactions contemplated by this Agreement.

Section 7.3.  <u>Survival of Representations and Warranties and Certain Covenants</u>.  Each of the representations, warranties and covenants in this Agreement or any agreement or certificate to be executed or delivered in connection with the transactions contemplated by this Agreement shall survive the Closing or termination of this Agreement.

## ARTICLE VIII
## COVENANTS

Section 8.1.  <u>Access to Business and Records</u>.

(a)     Debtors shall not sell or otherwise dispose of any Purchased Assets prior to the Closing Date to any Person other than Buyer.

(b)     In the event Debtors receive any payments, distributions or proceeds on behalf of the Purchased Assets during the period from the date hereof to the Closing Date, such payments shall offset the Purchase Price dollar for dollar.

Section 8.2.  <u>Notice of Inaccuracy</u>.

(a)     Promptly upon either Party becoming aware of the occurrence of, or the impending or threatened occurrence of, any event which would cause a breach of any of its own representations or warranties contained in <u>Section 7.1</u> or <u>Section 7.2</u>, such Party shall disclose each such event, in reasonable detail, by means of a written notice thereof to the other Party and such Party shall use its reasonable commercial efforts to remedy the same.

(b)     Each Party shall, promptly upon acquiring knowledge of the occurrence of any event that would cause the conditions to its obligations set forth in <u>Article IX</u> and <u>Article X</u>, as applicable, to fail to be fulfilled at the Closing, notify the other Party of such event.

(c)     Each Party shall promptly notify the other Party of any action, suit or proceeding that shall be instituted or overtly threatened in writing against such Party to restrain, prohibit or otherwise challenge the legality of any transaction contemplated by this Agreement.

Section 8.3.  <u>Consummation of Agreement</u>.  Each of the Parties shall use its commercially reasonable efforts to perform and fulfill all obligations and conditions on its part to be performed and fulfilled under this Agreement to the end that the transactions contemplated by this Agreement shall be fully carried out.

## ARTICLE IX
## CONDITIONS PRECEDENT TO THE OBLIGATIONS OF BUYER

The obligations of Buyer to consummate at the Closing the purchase of the Purchased Assets are subject to Buyer becoming the Successful Bidder (whether following the conclusion of the Auction and entry of the Sale Order or thereafter in its capacity as the Back-Up Bidder in the event the Successful Bidder fails to close within the Back-Up Period and Buyer elects, in its sole discretion, to become the Back-Up Bidder) and the fulfillment, prior to or at the Closing, of each of the following express conditions precedent (the "**Buyer's Conditions Precedent**"), any or all of which may be waived by Buyer in writing:

10

Section 9.1.   <u>Representations and Warranties</u>.  Each of the representations and warranties of Debtors set forth in <u>Section 7.1</u> of this Agreement shall be true and correct in all material respects on the Closing Date as though made on the Closing Date.

Section 9.2.   <u>Covenants</u>.   Debtors shall have performed and complied in all material respects with all of the covenants and agreements on Debtor's part to be performed and complied with as set forth herein.   Without limiting the foregoing, all covenants, conditions, and contingencies set forth in <u>Article V</u> and in <u>Article VIII</u> shall be satisfied to Buyer's sole and absolute discretion.

Section 9.3.   <u>No Change in Law</u>.  Since the date of this Agreement there shall have been no change in any applicable Law that makes it illegal for any Party hereto to perform its obligations hereunder (i) enacted (and not effectively vetoed), whenever effective, (ii) adopted as a final regulation pursuant to formal rule making, order-issuing or regulatory authority by any agency, board, commission, or other administrative, executive, or other regulatory body having jurisdiction over the Purchased Assets, or (iii) embodied in a final, formal ruling, order or decision of any judicial body having jurisdiction over the Purchased Assets.

Section 9.4.   [Reserved].

Section 9.5.   <u>Debtors' Closing Deliverables</u>.  At the Closing, and concurrently with the delivery of the Buyer's Closing Deliverables, Debtors shall have executed and delivered, or caused to have been delivered, to Buyer, Debtors' Closing Deliverables, each of which shall be in full force and effect and shall be in form and substance reasonably satisfactory to Buyer.

Section 9.6.   <u>Bankruptcy Matters</u>.   The Parties shall have received Bankruptcy Court approval of this Agreement, Buyer shall be the Successful Bidder at any Auction, and the Sale Order must be a Final Order entered by the Bankruptcy Court.

## ARTICLE X
## CONDITIONS PRECEDENT TO THE OBLIGATIONS OF DEBTORS

The obligations of Debtors to consummate at Closing the sale of the Purchased Assets are subject to Buyer becoming the Successful Bidder (whether following the conclusion of the Auction and entry of the Sale Order or thereafter in its capacity as the Back-Up Bidder in the event the Successful Bidder fails to close within the Back-Up Period and Buyer elects, in its sole discretion, to become the Back-Up Bidder) and the fulfillment, prior to or at the Closing, of each of the following express conditions precedent (the "**Debtors' Conditions Precedent**"), any or all of which may be waived by Debtors in writing:

Section 10.1.   <u>Representations and Warranties</u>. Each of the representations and warranties of Buyer set forth in <u>Section 7.2</u> of this Agreement shall be true and correct in all material respects on the Closing Date as though made on the Closing Date.

Section 10.2.   <u>Covenants</u>. Buyer shall have performed and complied in all material respects with all of the covenants and agreements on Buyer's part to be performed and complied with as set forth herein.

77294848;1

Section 10.3.   No Change in Law.  Since the date of this Agreement there shall have been no change in any applicable Law that makes it illegal for any Party hereto to perform its obligations hereunder (i) enacted (and not effectively vetoed), whenever effective, (ii) adopted as a final regulation pursuant to formal rule making, order-issuing or regulatory authority by any agency, board, commission, or other administrative, executive, or other regulatory body having jurisdiction over the Purchased Assets, or (iii) embodied in a final, formal ruling, order or decision of any judicial body having jurisdiction over the Purchased Assets.

Section 10.4.   Bankruptcy Matters.  The Parties shall have received Bankruptcy Court approval of this Agreement, Buyer shall be the Successful Bidder at any Auction, and the Sale Order must be a Final Order entered by the Bankruptcy Court.

Section 10.5.   Buyer's Closing Deliverables.  At the Closing, and concurrently with the delivery by the Debtors of the Debtors' Closing Deliverables, Buyer shall have executed and delivered, or caused to have been executed and delivered, to Debtor, the Buyer's Closing Deliverables, each of which shall be in full force and effect and shall be in form and substance reasonably satisfactory to Debtor.

## ARTICLE XI
## TERMINATION

Section 11.1.   Termination.

(a)      This Agreement may be terminated prior to Closing by mutual agreement of Debtors and Buyer.  Upon such termination, this Agreement shall terminate and neither Buyer nor Debtors shall have any further obligation or liability to the other hereunder.

(b)      This Agreement shall terminate automatically in the event that (i) Buyer is not chosen at the Auction to be the Successful Bidder or the Back-Up Bidder, (ii) Buyer is chosen at the Auction to be the Back-Up Bidder (to the extent Buyer elects, in its sole discretion, to become a Back-Up Bidder), upon the expiration of the Back-Up Period without Buyer having been designated as the Successful Bidder, or (iii) Buyer fails to close by the Closing (including any extensions of the Closing Date).

Section 11.2.   Termination by Debtors.  Debtors may terminate this Agreement by giving written notice to Buyer at any time prior to the Closing:

(a)      In the event Buyer has breached any representation, warranty, or covenant contained in this Agreement in any material respect, Debtors have notified Buyer of the breach, and the breach has continued without cure for a period of ten (10) days after the notice of breach; or

(b)      If all of Debtors' Conditions Precedent have not been satisfied or waived by Debtors on or before the Closing Date, unless the failure of any such condition(s) was caused by any act or failure to act of Debtors or any director, officer, partner, member, employee, or agent of Debtors or by Debtors' default under or breach of this Agreement.

Section 11.3.   Termination by Buyer.  In addition, Buyer may terminate this Agreement by giving written notice to Debtors at any time prior to the Closing:

(a)      In the event either Debtor has breached any representation, warranty, or covenant contained in this Agreement in any material respect, Buyer has notified such Debtor of the breach, and the breach has continued without cure for a period of ten (10) days after the notice of breach; or

(b)      If all of Buyer's Conditions Precedent have not been satisfied or waived by Buyer on or before the Closing Date, unless the failure of any such condition(s) was caused by any act or failure to act of Buyer or any director, officer, member, employee, or agent of Buyer or by Buyer's default under or breach of this Agreement.

(c)      Buyer shall have the right, in its sole discretion, to terminate this Agreement upon written notice to Debtors and Debtors' Counsel in the event that Debtors' financial condition has materially dissipated during the pendency of the Bankruptcy Cases.

Section 11.4.   Effect of Termination.  If any Party terminates this Agreement pursuant to this Article XI, this Agreement and all rights and obligations of the Parties under this Agreement automatically end without liability against the other Party, subject to, Article XII (Jury Waiver), Article XIII (Miscellaneous Provisions), and this Section 11.4, which shall remain in full force and survive any termination of this Agreement.  The Debtors shall return by wire transfer to Buyer the Deposit (inclusive of all interest earned thereon) and any additional funds delivered to Debtors or Debtors' Counsel.

(a)      NOTWITHSTANDING THE FOREGOING TO THE CONTRARY, IN THE EVENT THIS AGREEMENT IS TERMINATED BY DEBTORS BECAUSE OF THE KNOWING AND INTENTIONAL BREACH OF THIS AGREEMENT BY BUYER OR BECAUSE ONE OR MORE OF THE CONDITIONS TO DEBTORS' OBLIGATIONS UNDER THIS AGREEMENT IS NOT SATISFIED AS A RESULT OF BUYER'S KNOWING AND INTENTIONAL FAILURE TO COMPLY WITH ITS OBLIGATIONS UNDER THIS AGREEMENT, THEN DEBTORS' SOLE REMEDY SHALL BE TO RETAIN FROM THE DEPOSIT AN AMOUNT EQUAL TO ONE PERCENT (1%) OF THE PURCHASE PRICE AS LIQUIDATED DAMAGES AND NOT A PENALTY, THE PARTIES AGREEING THAT DEBTORS' DAMAGES ARISING FROM BUYER'S DEFAULT WOULD BE DIFFICULT TO ASCERTAIN AND THAT THE AMOUNT OF LIQUIDATED DAMAGES IS A FAIR AND REASONABLE ESTIMATE AT THE TIME OF ENTERING INTO THIS AGREEMENT OF THE AMOUNT OF SUCH DAMAGES.   WITHIN THREE (3) DAYS OF SUCH TERMINATION, DEBTORS SHALL REFUND TO BUYER THE REMAINING AMOUNT OF THE DEPOSIT AFTER SUCH DEDUCTION.

(b)      Notwithstanding the foregoing to the contrary, in the event this Agreement is terminated by Buyer because of the knowing an intentional breach of this Agreement by Debtors or because one or more of the conditions to Buyer's obligations under this Agreement is not satisfied as a result of Debtors' knowing and intentional failure to comply with its obligations under this Agreement, then Buyer's right to pursue all legal rights and remedies hereunder and under applicable Law shall survive such termination unimpaired.

13

Section 11.5.  <u>Specific Performance</u>.   The Parties agree that irreparable damage would occur in the event that any of the provisions of this Agreement were not performed by Debtors or were otherwise breached by Debtors.  The Parties accordingly agree that, prior to the termination of this Agreement pursuant to this <u>Article XI</u>, in addition to any other remedy to which Buyer is entitled at law or in equity, Buyer is entitled to injunctive relief to prevent breaches of this Agreement by Debtors and otherwise to enforce specifically the provisions of this Agreement against Debtors; provided that, Buyer shall only be entitled to injunctive relief if Buyer is not otherwise in breach of this Agreement or if Debtors are not otherwise entitled to terminate this Agreement.  Debtors expressly waive any requirement that Buyer obtain any bond or provide any indemnity in connection with any action seeking injunctive relief or specific enforcement of the provisions of this Agreement.

## ARTICLE XII
## JURY WAIVER

Section 12.1.  <u>Jury Trial Waiver</u>.   DEBTORS AND BUYER HEREBY WAIVE THEIR RIGHTS TO TRIAL BY JURY OF ANY DISPUTE ARISING OUT OF OR RELATING TO THIS AGREEMENT ALLEGED AGAINST EACH OTHER; AND DEBTORS AND BUYER HEREBY WAIVE ANY RIGHTS TO PROCEED BY WAY OF A CLASS ACTION, TO SERVE IN ANY REPRESENTATIVE CAPACITY FOR OTHERS, AND TO ACT AS A PRIVATE ATTORNEY GENERAL IN ANY CLAIM OR CONTROVERSY ARISING OUT OF OR RELATING TO THIS AGREEMENT OR THE BREACH, TERMINATION, ENFORCEMENT, INTERPRETATION OR VALIDITY THEREOF.

## ARTICLE XIII
## MISCELLANEOUS PROVISIONS

Section 13.1.  <u>Notices</u>.  Any notice required or permitted to be given under this Agreement shall be in writing and shall be deemed to be an adequate and sufficient notice if given in writing and service is made either by (i) personal delivery, in which case the service shall be deemed received the date of such personal delivery, (ii) nationally recognized overnight air courier service, next day delivery, prepaid, in which case the notice shall be deemed to have been received one (1) Business Day following delivery to such nationally recognized overnight air courier service, or (iii) at the time of being sent by email provided the email was sent prior to 5:00 p.m. Central Time (and otherwise shall be deemed to have been delivered on the next Business Day), and to the following street or email addresses (or such other address as either party may from time to time specify in writing to the other).

(a)    Any notice or demand to Debtors shall be addressed to Debtors at:

Historic Plank and Timber, Inc.
Adkom, LLC
[Insert]

|  | With a copy to: | The Desai Law Firm LLC |
|--|--|--|

With a copy to:
The Desai Law Firm LLC
13321 North Outer Forty Road, Suite 300
Saint Louis, MO 63017
Attn: Spencer Desai, Esq.
E-mail: spd@desailawfirmllc.com

(b)    Any notice or demand to Buyer shall be addressed to Buyer at:

5M Venture II, LLC
19 S. LaSalle Street, 16th Floor
Chicago, IL 60603
Attn: Mark Reiter
E-mail: mark.reiter@5mgroup.com

With a copy to:
Akerman LLP
71 S. Wacker Drive, 47th Floor
Chicago, IL 60606
Attn: Thomas B. Fullerton
E-mail: thomas.fullerton@akerman.com

Section 13.2.   Governing Law; Jurisdiction.   The internal laws of the State of Illinois, without regard to its choice of law provisions, shall govern the validity, construction, performance and effect of this Agreement.   Each of the Parties hereby irrevocably and unconditionally agrees that any legal action, suit, dispute or proceeding arising under, out of or in connection with this Agreement shall be brought in the Bankruptcy Court (for so long as the Bankruptcy Court has jurisdiction) and otherwise in the Federal or State courts of competent jurisdiction located in Illinois and each of the Parties hereto irrevocably accepts and submits itself to the exclusive jurisdiction of such courts, generally and unconditionally, and waives any objections as to venue or inconvenient forum.   Notwithstanding the foregoing consent to jurisdiction, so long as the Bankruptcy Court has jurisdiction, each of the Parties agrees that the Bankruptcy Court shall have exclusive jurisdiction with respect to any matter under or arising out of or in connection with this Agreement, and hereby submits to the jurisdiction of the Bankruptcy Court.

Section 13.3.   Counterparts.   This Agreement may be executed in one or more counterparts, all of which shall be considered one and the same agreement.

Section 13.4.   Integrated Agreement.   This Agreement and the other agreements described herein supersede all prior and contemporaneous agreements, oral and written, between the Parties hereto with respect to the subject matter hereof.

Section 13.5.   No Oral Modification.   Neither this Agreement, nor any provision hereof, may be changed, waived, discharged, supplemented or terminated orally, but only by an agreement in writing signed by the Party against which the enforcement of such change, waiver, discharge or termination is sought.

Section 13.6.   Successors and Assigns; No Third Party Beneficiaries.   This Agreement shall inure to the benefit of and be binding upon the Parties hereto and their respective successors

and assigns.  Except as specifically provided in this <u>Section 13.6</u>, this Agreement is not intended to, and shall not, create any rights in any Person whomsoever except Buyer and Debtors.

Section 13.7.  <u>Assignment</u>.  Neither Party shall assign its rights or delegate its duties under this Agreement without the prior written consent of the other Party hereto, except that Buyer may assign its rights and obligations under this Agreement to an affiliate of Buyer, without Debtors' consent and without further approval of the Bankruptcy Court.

Section 13.8.  <u>Partial Invalidity</u>.  If any provision of this Agreement, or any application thereof, should be held by a court of competent jurisdiction to be invalid, void or unenforceable, all other provisions of this Agreement, and all applications thereof, not held invalid, void or unenforceable shall continue in full force and effect and shall in no way be affected, impaired or invalidated thereby, provided that the severance from this Agreement of such provision does not materially impair the ability of the Parties to consummate the transactions contemplated hereby. In lieu of such invalid, void or unenforceable provision, there shall be added to this Agreement a term, provision, covenant or condition that is valid, not void and enforceable and is as similar to such invalid, void or unenforceable provision as may be possible.

Section 13.9.  <u>No Presumption Against the Draftsman</u>.  Each Party having been represented in the negotiation of this Agreement, and having had ample opportunity to review the language hereof, there shall be no presumption against any Party on the ground that such Party was responsible for preparing this Agreement, any of Debtors' Closing Deliverables or any of Buyer's Closing Deliverables.

Section 13.10.  <u>Expenses</u>.  All expenses incurred by the Parties hereto in connection with or related to the authorization, preparation and execution of this Agreement and the Closing of the transaction contemplated hereby, including fees and expenses of agents, representatives, counsel and accountants employed by any such Party, shall be borne solely and entirely by the Party which has incurred the same.

[THIS SPACE LEFT BLANK INTENTIONALLY.
SIGNATURE PAGES FOLLOW.]

77294848;1

      **IN WITNESS WHEREOF**, the Parties have executed this Agreement as of the date set forth above.

**DEBTORS:**

**BUYER:**

17

**APPENDIX A**
**to**
**ASSET PURCHASE AND SALE AGREEMENT**

**Glossary of Defined Terms**

"**363 Motion**" has the meaning ascribed to such term in <u>Section 5.1(b)</u>.

"**Actions**" has the meaning ascribed to such term in <u>Section 7.1(f)</u>.

"**Agreement**" means this Asset Purchase and Sale Agreement, together with all Schedules, Exhibits, Appendices and other attachments hereto, and all amendments and supplements hereto and thereto.

"**Allowed Claims**" has the meaning ascribed to such term in the Recitals hereto.

"**Assignment Agreement**" means that certain Assignment Agreement, the form of which is attached hereto as <u>Exhibit "B"</u> to be executed by Debtors and Buyer and delivered at the Closing on the Closing Date providing for, among other matters, the assignment by Debtor of the Purchased Assets.

"**Auction**" means the bankruptcy auction of the Debtor's Purchased Assets, conducted by Debtor pursuant to the Bidding Procedures.

"**Back-Up Bidder**" has the meaning ascribed to such term in <u>Section 5.2(c)</u>.

"**Back-Up Period**" has the meaning ascribed to such term in <u>Section 5.2(c)</u>.

"**Bankruptcy Case**," "**Bankruptcy Code**," and "**Bankruptcy Court**" have the meanings ascribed to said terms in the Recitals.

"**Bidding Procedures**" has the meaning ascribed to such term in <u>Section 5.2(a)</u>.

"**Break-Up Fee**" has the meaning ascribed to such term in <u>Section 5.2(d)</u>.

"**Business Day**" means any day other than a Saturday, Sunday or other day upon which banks in the State of Illinois are authorized or required to be closed.

"**Buyer**" means 5M Venture II, LLC, an Illinois limited liability company, or its assignee.

"**Buyer's Closing Deliverables**" has the meaning ascribed to such term in <u>Section 6.3</u>.

"**Buyer's Conditions Precedent**" has the meaning ascribed to such term in <u>Article IX</u>.

"**Closing**" means the proceedings pursuant to which the sale of the Purchased Assets is consummated.

"**Closing Date**" has the meaning ascribed to such term in <u>Section 6.1</u>.

77294848;1

"**Debtors**" means, Historic Timber and Plank, Inc. and Adkom LLC.

"**Debtors' Closing Deliverables**" has the meaning ascribed to such term in Section 6.2.

"**Debtors' Conditions Precedent**" has the meaning ascribed to such term in Article X.

"**Deposit**" has the meaning ascribed to such term in Section 4.2(a).

"**Expense Reimbursement**" has the meaning ascribed to such term in Section 5.2(d).

"**Final Order**" has the meaning ascribed to such term in Section 5.1(c).

"**Governmental Authority**" means the federal government of the United States, the government of any state of the United States or any political subdivision thereof, and any Person exercising executive, legislative, judicial, regulatory or administrative functions of or pertaining to government and any other governmental entity, instrumentality, agency, authority or commission.

"**Law(s)**" means any law, statute, act, decree, ordinance, rule, writ, injunction, directive (to the extent having the force of law), order (unilateral or consensual), final non-appealable judgment directly applicable to the relevant Party, treaty, code or regulation (including any of the foregoing relating to health or safety matters), or any interpretation of any of the foregoing, as enacted, issued or promulgated by any Governmental Authority, including all amendments, modifications, extensions, replacements or reenactments thereof or thereto.

"**Party(ies)**" has the meaning ascribed to such term in the preamble hereto.

"**Person**" means any individual natural person or any artificial person including any corporation, general or limited partnership, joint venture, association, unincorporated organization, trust, limited liability company or partnership, Governmental Authority or other entity.

"**Petition Date**" has the meaning ascribed to such term in the Recitals hereto.

"**Purchased Assets**" has the meaning ascribed to such term in Section 2.1.

"**Purchase Price**" has the meaning ascribed to such term in Section 4.1(a).

"**Sale Hearing**" has the meaning ascribed to such term in Section 5.2(a).

"**Sale Order**" has the meaning ascribed to such term in Section 5.1(b).

"**Successful Bidder**" means the bidder who shall have submitted the highest or otherwise best bid at the conclusion of the Auction in accordance with the Bidding Procedures.

"**Tax(es)**" means any tax, charge, impost, tariff, duty or fee of any kind charged, imposed or levied, directly or indirectly, by any Governmental Authority including any value-added tax, sales tax, stamp duty, import duty, withholding tax (whether on income, dividends, interest payments, fees, equipment rentals or otherwise), tax on foreign currency loans or foreign exchange

transactions, excise tax, franchise tax, transfer tax, property tax, unemployment tax or social security tax including any interest, penalties or other additions thereon.

SCHEDULES:

Schedule 4.2 – Wire Instructions

EXHIBITS:
Exhibit A – Sale Order
Exhibit B – Assignment Agreement

77294848;1